Argued and submitted January 31, reversed and remanded September 5, 2007

## STATE OF OREGON,
### *Plaintiff-Appellant,*

*v.*

## MICHAEL HENRY FORKER,
### *Defendant-Respondent.*

Washington County Circuit Court
C032607CR; A125112

168 P3d 279

Paul L. Smith, Assistant Attorney General, argued the cause for appellant. On the brief were Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Rolf C. Moan, Assistant Attorney General.

David O. Ferry, Deputy Public Defender, argued the cause for respondent. With him on the brief were Peter A. Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Office of Public Defense Services.

Before Haselton, Presiding Judge, and Brewer, Chief Judge, and Armstrong, Judge.

BREWER, C. J.

**BREWER, C. J.**

In this prosecution for encouraging child sexual abuse in the second degree, the state appeals from a pretrial order suppressing evidence that police seized from defendant's residence during the execution of a search warrant. ORS 138.060(1)(c). The trial court found that probable cause did not exist to believe, based on the information contained in the affidavit for the search warrant, that evidence of encouraging child sexual abuse would be found at the address described in the warrant. We review to determine whether, on the basis of the information contained in the application for the warrant, the issuing magistrate could have concluded that there was probable cause to believe that such evidence would be found at that location. *State v. Binner*, 128 Or App 639, 645, 877 P2d 642, *rev den*, 320 Or 325 (1994). We reverse and remand.

The search warrant was issued based on an affidavit by Detective Vandehey of the Washington County Sheriff's Office. The first paragraph of Vandehey's affidavit set out her extensive training and experience in child sexual abuse investigations. Several paragraphs then elaborated on how child sex abusers use computers to communicate with victims and to produce, distribute, and store child pornography. Specifically, Vandehey stated, "Based upon my experience and training, I know that persons who collect [records of encounters with children and child pornography] rarely, if ever, dispose of sexual[ly] explicit material. Those materials are often prized possessions * * *."

The affidavit also related that on June 4, 2003, Vandehey had separate communications with the Department of Human Services (DHS) Child Abuse Hotline and a named informant, "Dale Nader, a psychotherapist." In the order related in the affidavit, the first communication that Vandehey received was the report from DHS, which was based on a call made to the DHS hotline regarding defendant. As set out in the affidavit, the report identified defendant by name, date of birth, and residence address. The report identified defendant as a former patient of the "mandatory reporter" who made the call and stated that defendant was "engaging in sexual intercourse with male juveniles between

the ages of 13 and 17." The report also asserted that defendant "maintains a collection of child pornography, goes to the apartment complex swimming pool with the express intent of watching young boys at the pool, and engages in relationships with young boys via the Internet in chat rooms."

The next three paragraphs of the affidavit related information that Nader provided to Vandehey during a telephone call. That information was consistent with the DHS report but expanded on that report in greater detail, for example, regarding defendant's activities with juvenile males and his pornography collection. The affidavit identified Nader as "a psychotherapist" who reported to Vandehey that he had been providing therapy to defendant since October 2002, with a two-month break between December 2002 and February 2003, when defendant was out of work and unable to afford treatment. According to the affidavit, Nader reported that he ultimately continued to treat defendant until June 2, 2003, two days before his conversation with Vandehey. At that time, Nader terminated treatment "because [defendant] refused to abide by all of the conditions of a safety plan Nader had put forth to [defendant]."

Nader told Vandehey that defendant "had agreed to stop dating and engaging in sexual activities with juvenile males and also agreed to stop engaging in relationships with juvenile males over the Internet and in chat rooms." However, Nader said that defendant told him that "[defendant] refused to stop going to the swimming pool for the express purpose of looking at juvenile males and further refused to stop viewing, destroy or otherwise get rid of his child pornography collection." According to Nader, defendant stated that he had been collecting child pornography for more than eight years, possessed an "extensive" collection, kept a journal on his personal computer of online conversations with juvenile males, and used the same computer "to engage juvenile males in online chat rooms and through America Online Instant Messaging."

In addition, the affidavit provided a detailed physical description of the residence to be searched.

On June 10, 2003, a circuit court judge issued a search warrant based on Vandehey's affidavit. The police

executed the warrant on or about the same day. On the basis of evidence found at his residence, defendant was charged with 10 counts of encouraging child sexual abuse in the second degree under ORS 163.686. Before trial, he moved to suppress the evidence, and the trial court granted the motion, concluding that "probable cause did not exist that the evidence sought in the warrant would be located at the address listed in both the affidavit and warrant." The trial court concluded that the affidavit was insufficient because it failed to establish (1) that the person identified as Nader was who he said he was; (2) when defendant committed the alleged illegal acts; (3) whether the evidence currently would be found at defendant's residence; and (4) that defendant currently lived at the address to be searched.

The state contends that the trial court erred by failing to credit the issuing magistrate with inferences that she reasonably could have drawn when issuing the warrant. According to the state, those inferences were that (1) Nader was defendant's former psychotherapist, and all of the information that Nader related about defendant came from defendant himself; (2) defendant currently possessed an extensive child pornography collection and was presently engaging in other unlawful behavior involving children; (3) evidence of defendant's unlawful conduct probably would be found at his residence; and (4) the address set out in the affidavit was defendant's current residence address.

Defendant first responds that Vandehey's failure to demonstrate in the affidavit that she verified Nader's identity or the information that he provided deprived that information of the presumption of veracity that is owed to a "named informant." Defendant asserts that, without the benefit of such a presumption, the affidavit could not support an inference that evidence of criminal activity would be found at defendant's residence. With respect to the state's second and third arguments, defendant asserts that the trial court properly concluded that the affidavit failed to establish that defendant currently was engaged in unlawful conduct with children and that he possessed evidence of that conduct, including child pornography, at his residence. Finally, defendant argues that nothing in the affidavit established that

"the person who called DHS provided an accurate and up-to-date address for defendant (if, in fact, DHS got the address from the anonymous caller)."

■    We address the parties' arguments in order, beginning with the issue of whether the issuing magistrate reasonably could infer from the affidavit that Nader was defendant's former psychotherapist and that the information that Nader related about defendant came from defendant himself. For the following reasons, we agree with the state that those inferences reasonably could be drawn from the affidavit.

First, the sequence and organizational structure of the affidavit supports the inference that Nader was the "mandatory reporter"[1] who had called the DHS hotline. The paragraph of the affidavit describing the report that Vandehey received from DHS immediately preceded the discussion of the telephone conversation that Vandehey had with Nader on the same day. As a matter of logic, that order of communication coherently explains why Vandehey had a conversation with Nader in the first instance. Moreover, defendant did not dispute before the trial court that Nader was the mandatory reporter who called DHS.[2] Accordingly, we conclude that a magistrate reasonably could infer that the person who called DHS and the person with whom Vandehey

---

[1] ORS 419B.015 provides, in part:

"(1)(a) A person making a report of child abuse, whether voluntarily or pursuant to ORS 419B.010 [identifying mandatory reporters], shall make an oral report by telephone or otherwise to the local office of the Department of Human Services, to the designee of the department or to a law enforcement agency within the county where the person making the report is located at the time of the contact. The report shall contain, if known, the names and addresses of the child and the parents of the child or other persons responsible for care of the child, the child's age, the nature and extent of the abuse, including any evidence of previous abuse, the explanation given for the abuse and any other information that the person making the report believes might be helpful in establishing the cause of the abuse and the identity of the perpetrator.

"(b) When a report is received by the department, the department shall notify a law enforcement agency within the county where the report was made."

[2] In his memorandum in support of his motion to suppress, defendant stated that "[t]he discovery, as well as the report itself, makes it clear that Dale Nader was the mandatory reporter who called DHS."

later spoke—identified as Nader—were one and the same person.

Defendant nonetheless suggests that, in the absence of corroboration of his identity, the issuing magistrate was not entitled to infer that the person identified as Nader was who he said he was. Defendant hypothesizes that the person might have been an impostor who was perpetrating a fraud on DHS and Vandehey in order to harm defendant. Such conjecture, however, is not the proper focus of our standard for reviewing the sufficiency of an affidavit for a search warrant.

■■ The analytical framework for determining the sufficiency of an affidavit for a search warrant is set out in ORS 133.545(4), which provides:

> "The application shall consist of a proposed warrant in conformance with ORS 133.565, and shall be supported by one or more affidavits particularly setting forth the facts and circumstances tending to show that the objects of the search are in the places, or in the possession of the individuals, to be searched. If an affidavit is based in whole or in part on hearsay, the affiant shall set forth facts bearing on any unnamed informant's reliability and shall disclose, as far as possible, the means by which the information was obtained."

The task of a reviewing court is to determine whether an issuing magistrate reasonably *could have* concluded from the facts and circumstances set out in the supporting affidavit that the objects of the search are in the places, or in the possession of the individuals, to be searched. *See Binner*, 128 Or App at 645; *see also State v. Pelster / Boyer*, 172 Or App 596, 609, 21 P3d 106, *rev den*, 332 Or 632 (2001) (reviewing court erred by refusing to draw an inference when the inference was available and reasonable from the affidavit). "The fact that the information in the affidavit may reasonably give rise to *other* inferences does not mean that the affidavit is insufficient." *State v. Wheelon*, 137 Or App 63, 72, 903 P2d 399 (1995), *rev den*, 327 Or 123 (1998) (emphasis in original); *see also State v. Donahue*, 93 Or App 341, 347, 762 P2d 1022 (1988), *rev den*, 307 Or 303 (1989) (explaining that "probable cause may exist even if there are other equally plausible inferences from the stated facts"). In *Pelster / Boyer*, we

explained the rationale for our deferential standard of review:

> "In reviewing the issuance of a search warrant, we defer to the issuing magistrate's determination of probable cause and resolve doubtful cases by the preference for searches that are conducted under the authority of warrants rather than without prior judicial authorization. *See State v. Prince*, 93 Or App 106, 112, 760 P2d 1356, *rev den* 307 Or 246 (1988)."

172 Or App at 600.

Because defendant questions the identity of the informant in this case, another factor also informs our review. There are different classes of persons who provide information to the police, ranging from unnamed informants to confidential informants, who may be themselves a part of the criminal milieu, to named informants, such as ordinary citizens who are witnesses to or victims of crime. *State v. Villagran*, 294 Or 404, 409-10, 657 P2d 1223 (1983); *State v. Montigue*, 288 Or 359, 363-65, 605 P2d 656, *cert den*, 449 US 846 (1980). Courts view those at the former end of the spectrum with the most suspicion and those at the latter end with the least. *See Villagran*, 294 Or at 409. Thus, when an affidavit is based on information supplied by an unnamed informant, the affidavit must demonstrate the basis for the informant's knowledge and must include facts that establish the informant's veracity. ORS 133.545(4); *State v. Carlile*, 290 Or 161, 164, 619 P2d 1280 (1980). By contrast, when an affidavit relies on information provided by a named informant, it is not mandatory that the affidavit contain such information. Rather, determining pertinent factors such as reliability and veracity of the named informant are part and parcel of the court's general obligation to construe the affidavit in a "commonsense and realistic fashion" to determine from the totality of the circumstances whether there is probable cause. *See State v. Johnson*, 340 Or 319, 329-30, 131 P3d 173, *cert den*, ____ US ____ , 127 S Ct 724, 166 L Ed 2d 564 (2006); *Pelster / Boyer*, 172 Or App at 602.

The affidavit in this case is not a model of clarity. As defendant observes, there are gaps in Vandehey's explanation of the circumstances under which she obtained the information set out in the affidavit. However, a commonsense

view of the affidavit could permit a magistrate to reasonably infer that the person who identified himself as Nader was who he claimed to be and, thus, an authentic named informant. Both in the report from DHS and the conversation with Vandehey, the basis for the informant's knowledge appeared to be grounded in a patient/therapist relationship. In the DHS report, defendant is referred to as a "former patient" and Nader is identified as defendant's "psychotherapist," who had been providing therapy for several months. In addition, according to Vandehey, Nader told her that many of the disclosures came directly from defendant. Indeed, the disclosures—in content and detail—support the authenticity of Nader's self-identification as a psychotherapist, because they were of a personal nature that a patient typically would disclose to a treating professional in the context of a confidential relationship. Likewise, the terminology that the informant used and the level of detail that he provided support the inference that his relationship with defendant was both professional and confidential. For example, the informant referred to a "safety plan," the specific range of ages of boys with whom defendant engaged in illegal conduct, the Internet service provider that defendant used to contact children, and the length of time that defendant had been collecting child pornography. A reasonable magistrate not only could infer that Nader was a treatment provider to whom defendant had disclosed information about his activities and child pornography, but that Nader believed that he was required by law to report the information. Although ORS 419B.025[3] furnishes immunity to persons who, in good faith, report child abuse to the authorities, the informant exposed himself to potential liability for making the report if it was made in bad faith.

Furthermore, the issuing magistrate reasonably could have inferred from the affidavit that Vandehey initiated the call to Nader, thus making it even more likely that

---

[3] ORS 419B.025 provides:

"Anyone participating in good faith in the making of a report of child abuse and who has reasonable grounds for the making thereof shall have immunity from any liability, civil or criminal, that might otherwise be incurred or imposed with respect to the making or content of such report. Any such participant shall have the same immunity with respect to participating in any judicial proceeding resulting from such report."

he was defendant's psychotherapist. The organizational structure of the affidavit permits the reasonable inference that, after receiving the DHS report, Vandehey followed up by contacting Nader at a telephone number that he had provided to the DHS hotline. However, irrespective of whether the informant or Vandehey initiated the communication between them, the informant identified himself as Nader, provided detailed information that was consistent with his self-identification as defendant's psychotherapist, and, thus, the issuing magistrate reasonably could infer that he was an authentic named informant. Accordingly, we examine the parties' remaining arguments based on that premise.

■ We turn to the trial court's determination that the affidavit failed to establish that defendant was currently engaged in criminal conduct with minors and that he currently possessed at his residence evidence of that conduct. Again, we conclude that an issuing magistrate reasonably could have drawn from the affidavit the necessary inferences to issue the warrant. The affidavit related that Nader spoke with Vandehey only two days after terminating defendant's treatment because defendant had refused to comply with a safety plan that included an agreement to desist from engaging in actual and virtual sexual activity with children. Nader stated that, at the time treatment ended, defendant continued to possess and view his child pornography collection. Nader also stated that defendant told him that he had been collecting child pornography for eight years and that his collection was quite "extensive." Bolstering those facts, Vandehey averred that, in her experience, persons who collect child pornography "rarely, if ever, dispose of sexual explicit materials." Moreover, the search warrant was issued and executed within a week after Nader's last treatment session with defendant.

In addition, the affidavit included information that permitted the issuing magistrate to infer that the described evidence would be found at defendant's residence, rather than a different location. As discussed, defendant told Nader that he kept a journal on his *personal* computer of online conversations with juveniles and that he used the same computer "to engage juvenile males in online chat rooms and through America Online Instant Messaging." Because it was

reasonable to infer that defendant's personal computer could be found at his residence, the magistrate reasonably could find that evidence of encouraging child sexual abuse probably would be found at defendant's residence.

■        Finally, we address the trial court's determination that the affidavit failed to demonstrate that the informant provided an accurate and current address for defendant. The state responds that "the affidavit supports the reasonable inference that the address information must have come from Nader, who would have obtained the address in the course of his doctor-client relationship with defendant." We agree. ORS 419B.015 provides that a mandatory reporter of child abuse shall report any "information that the person making the report believes might be helpful in establishing * * * the identity of the perpetrator." Because Nader was a named informant who provided a detailed account about defendant that was consistent with the duties imposed on mandatory child abuse reporters, it was a reasonable and available inference that Nader provided an accurate address for defendant to DHS based on his records as a recent provider of paid professional services to defendant.

In sum, the issuing magistrate in this case reasonably could have concluded from the facts and circumstances set out in the supporting affidavit that the objects of the search probably would be found at defendant's residence, which was the address described in the affidavit and warrant. Accordingly, the trial court erred in granting defendant's motion to suppress.

Reversed and remanded.