Argued and submitted May 28, reversed and remanded October 15, 2008

STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

ARTEMIO RAMIREZ,
*Defendant-Respondent.*

Washington County Circuit Court
C051541CR; A133107

195 P3d 460

Christina M. Hutchins, Senior Assistant Attorney General, argued the cause for appellant. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Joshua B. Crowther, Deputy Public Defender, argued the cause for respondent. With him on the brief was Peter Gartlan, Chief Defender, Legal Services Division, Office of Public Defense Services.

Before Landau, Presiding Judge, and Schuman, Judge, and Deits, Judge pro tempore.

DEITS, J. pro tempore.

**DEITS, J. pro tempore**

In this prosecution for unlawful delivery and possession of a controlled substance, the state appeals from a pretrial order suppressing evidence that police seized from defendant's bedroom during the execution of a search warrant. ORS 138.060(1). We reverse and remand.

The affidavit supporting the search warrant recited that Detective LaMonica, a Hillsboro Police Officer and member of the Westside Interagency Narcotics (WIN) Team, learned from a named informant that the informant had been with a friend who had purchased methamphetamine from "Hispanic people" living in Apartment #9 at a certain apartment complex in Hillsboro. Based on that information, LaMonica and three other police officers conducted a "knock and talk" at the apartment. Defendant answered the door and, after LaMonica identified himself and explained that he was investigating suspected drug activity, defendant voluntarily agreed to come outside to talk with the officers. One of the other officers, Detective Monk, asked defendant for his name and identification. Defendant gave Monk his name but told him that he had no identification. Monk saw defendant's wallet in his back pocket and asked him if he could look in the wallet for identification. Defendant handed him the wallet. Monk did not find identification but found a large amount of cash.[1] Defendant admitted to Monk that he lived in the apartment.

The affidavit also recited that two other tenants of the apartment came out of the apartment to speak to the officers. During those encounters, the officers found methamphetamine and packaging materials consistent with unlawful delivery and unlawful possession of a controlled substance on both persons. Both individuals told the officers that they lived in the apartment.

LaMonica also stated that he and other officers entered the apartment to secure it prior to seeking a search

---

[1] The trial court ruled that Monk exceeded the scope of defendant's consent to look in the wallet for identification when he took the money out and counted it. The trial court excised that portion of the affidavit that stated the amount of cash that was found but allowed the information that a large amount of cash was found to be considered.

warrant. After entering the apartment, the officers found two other persons in an upstairs locked bedroom. It was later established that the bedroom that they were in was not defendant's. The persons in the locked bedroom were asked to come out and leave the apartment, and they did so. Also, during the time period when LaMonica was preparing the affidavit in support of the search warrant, a person came to the door of the apartment with a rolled-up $20 bill. LaMonica averred in the affidavit that he submitted in support of the search warrant that, based on his training and experience, he believed that this conduct was indicative of someone intending to purchase drugs.

Relying on the affidavit prepared by LaMonica in support of the search warrant, the issuing magistrate signed a warrant authorizing a search of the apartment for evidence related to drug activity. During the execution of the search warrant, the officers found evidence of drug activity in the apartment. Specifically, in defendant's bedroom, they found large amounts of methamphetamine as well as a picture of defendant and documents with defendant's name on them. Relying on that evidence, defendant was charged with delivery of a controlled substance and possession of a controlled substance.

■■ In reviewing the issuance of a search warrant, this court defers to the issuing magistrate's determination of probable cause and resolves doubtful cases in light of the preference for searches that are conducted under the authority of warrants rather than without prior judicial authorization. *State v. Pelster/Boyer*, 172 Or App 596, 600, 21 P3d 106, *rev den*, 332 Or 632 (2001) (citing *State v. Prince*, 93 Or App 106, 112, 760 P2d 1356, *rev den*, 307 Or 246 (1988)).

■ The role of a reviewing court is to determine whether a neutral and detached magistrate reasonably could have concluded, from the facts and circumstances set out in the supporting affidavit and all reasonable inferences that can be drawn from those facts and circumstances, that the objects of the search would be in the places or in the possession of the individuals authorized by the warrant to be searched. *State v. Castilleja*, 345 Or 255, 270, 192 P3d 1283 (2008); *State v. Forker*, 214 Or App 622, 632, 168 P3d 279 (2007), *rev den*, 344

Or 280 (2008) (trial court erred in refusing to credit the issuing magistrate with inferences that the magistrate could reasonably have drawn when issuing the warrant); *Pelster/ Boyer*, 172 Or App at 609 (trial court erred by refusing to draw an inference when the inference was available and reasonable from the affidavit). If a supporting affidavit reasonably permits the issuing magistrate to draw an inference, the fact that other inferences could also be drawn from the information in the affidavit does not mean that the affidavit is insufficient. *Forker*, 214 Or App at 628. Finally, the defendant has the burden of proving that a search conducted pursuant to a search warrant was unlawful. *State v. Coatney*, 44 Or App 13, 18, 604 P2d 1269, *rev den*, 289 Or 107 (1980).

In granting defendant's motion to suppress in this case, the trial court held that the affidavit in support of the search warrant included facts sufficient to establish probable cause that evidence of drug activity would be found in defendant's apartment. The court concluded, however, that the affidavit was insufficient to establish that defendant, in contrast to his roommates, was involved in drug activity. It further held that, because defendant's bedroom was a separate living unit of the apartment, specific information to establish probable cause to search defendant's bedroom was necessary to justify the search of defendant's bedroom in the apartment. The court determined that there were not sufficient facts in the affidavit to support that conclusion and, accordingly, granted the motion to suppress the evidence found during the execution of the search warrant in defendant's bedroom.

The state argues that the trial court's reasoning in granting the motion to suppress was flawed. Specifically, the state asserts that the trial court erred in confusing the rule that is applied to multiple residences from the one applied to a living unit with multiple residents. For the reasons that we will explain, we agree with the state's argument and conclude that the trial court erred in granting the motion to suppress.

We have held that, generally, a search warrant issued for the search of a residential unit authorizes the search of the entire residence unless it is shown that there

are separate units or subunits in the residence. *State v. Fleming*, 91 Or App 394, 397, 755 P2d 725, *rev den*, 306 Or 661 (1988). Further, the fact that there are multiple persons living in a residence does not automatically make the residence a multiple-unit structure. Rather, the objective characteristics of the living unit must be considered to determine if it is one living unit or is made up of separate units, which would require a separate showing of probable cause to authorize a search of each separate unit. *Coatney*, 44 Or App at 18; *State v. Willcutt*, 19 Or App 93, 526 P2d 607, *rev den* (1974). Information such as the actual physical structure of the residence, whether there are separate entrances or separate numbers on doors in the residence, whether the doors to different parts of the living unit have locks and are locked, and whether occupants of the unit have restricted access in any way to other occupants are pertinent considerations.

Here, defendant presented no evidence that his bedroom was a separate residential unit within the apartment. There is no evidence in the record of objective verifiable facts that would indicate that defendant's bedroom was a separate unit. There was no evidence that either before or after the officers entered the apartment, they observed anything about the physical structure of defendant's living space that made it anything other than an ordinary bedroom in a residence. Although there was evidence that, when the police entered the apartment to secure it, they found that one of the other bedrooms in the apartment had a lock and was locked, there is no evidence that, at that time, or when the search warrant was executed, the officers observed a lock on defendant's door, that it was locked, or even that the door to defendant's bedroom was shut. Contrary to the trial court's apparent holding, it is not a necessary inference that, because one bedroom in a house had a lock and was, in fact, locked, it follows that all other bedrooms had locks or were locked. In addition, significantly, defendant did not provide any evidence, nor were there any facts in the record, that established that access to defendant's bedroom by the other residents of the apartment was in any way limited, or that anything else about the structural configuration of the apartment was indicative of separate living units.

Particularly in view of the preference for searches conducted pursuant to warrants, as well as the fact that

defendant has the burden to prove that the search was unlawful, we conclude that the issuing magistrate could have concluded from the facts and circumstances set out in the supporting affidavit that the objects of the search probably would be found at the apartment. Further, we conclude that there was no evidence that defendant's bedroom in the apartment was a separate subunit of the apartment that would require separate probable cause to justify a search. Consequently, we hold that the trial court erred in granting defendant's motion to suppress.

Reversed and remanded.