Argued and submitted May 31, 2000, affirmed November 21, 2001

# STATE OF OREGON,
## *Appellant,*

*v.*

# SHEILA NICHOLS WILSON
## and Robert James Moody,
### *Respondents.*

CF02644, CF02643; A104895 (Control), A104939
(Cases Consolidated)

35 P3d 1111

Timothy A. Sylwester, Assistant Attorney General, argued the cause for appellant. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Robin A. Jones, Deputy Public Defender, argued the cause for respondents. With her on the brief was David E. Groom, Public Defender.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

LINDER, J.

**LINDER, J.**

In these consolidated criminal cases, defendants were charged with possession of a controlled substance, ORS 475.992, and felon in possession of a firearm, ORS 166.270. The trial court granted defendants' motion to suppress, concluding that the warrant authorizing the search of defendants' residence was not supported by probable cause.[1] The state appeals, and we affirm.

On December 17, 1997, Deputy Sheriff McHaney arranged for a confidential reliable informant (CRI) to make a controlled buy of methamphetamine from defendant Moody. The next day, McHaney prepared an affidavit in support of a search warrant for the residence where Moody and defendant Wilson lived. In the affidavit, McHaney recited that the controlled buy had occurred within the preceding 72 hours. He then set forth this description of the circumstances of the controlled buy:

> "I met with the CRI and searched the CRI. I then gave the CRI a predetermined amount of money which had been photocopied. I then followed the CRI to a predetermined location. I observed the CRI enter the predetermined location. I then observed the CRI exit the location after only staying a few minutes. I also saw Moody leave the location after the CRI left. I followed the CRI to another location which we had predetermined. I again searched the CRI and the only thing found was the Methamphetamine. The CRI said that Moody is very paranoid. The CRI told me that the CRI handed Moody the money and then Moody handed the CRI the Methamphetamine. The CRI told me that Moody has lots of Methamphetamine and that Moody told the CRI if he does not get arrested for the sale to the CRI Moody would like the CRI to sell for him. The CRI also said that Moody told him he has lots of Methamphetamine to sell. Moody lives at 1415 Carolyn Terrace in Elgin."

The affidavit continued with a physical description of defendants' residence and a reference to a purportedly attached

---

[1] Because the charges against both defendants arose from the same warrant, the trial court expanded its order granting defendant Moody's motions to controvert and to suppress evidence to include and to apply equally to defendant Wilson. On the state's motion, we consolidated both cases for appeal.

photograph of it. Also, the affidavit recited McHaney's training and experience with people who traffic in drugs and related that such individuals usually have hidden "on their property, person, or in their vehicles" evidence of their drug dealing.

Although McHaney prepared the affidavit on December 18, he did not present it to the magistrate until four days later. When he did so, he did not change the recital that the controlled buy had occurred within the past 72 hours (*i.e.*, three days). The search warrant issued, police searched defendants' residence pursuant to it, and they seized evidence of defendants' possession of controlled substances and firearms.

Before trial, defendants moved to controvert the affidavit that supported the search warrant and to suppress all evidence found in the search of defendants' residence. After an evidentiary hearing, the trial court found that the affidavit contained inaccurate information and also omitted material information. The trial court concluded that, so controverted, the affidavit was insufficient to provide probable cause to believe that the items to be seized (controlled substances and related evidence) would be found in the particular place to be searched (defendants' residence). The trial court therefore suppressed the evidence.

On appeal, the parties renew the arguments they made below. The state argues that, even disregarding the inaccuracies and omissions in the affidavit, the circumstances of the controlled buy in combination with McHaney's training and experience provided probable cause for the search of defendants' residence. In response, defendants principally rely on the trial court's reasons for finding the affidavit insufficient, which we detail in greater length below. We agree with defendants that the trial court accurately assessed the affidavit in light of the controverting information and that it correctly suppressed the evidence seized pursuant to the warrant.

We begin with the settled legal principles that govern our review of search warrants. To be sufficient, an affidavit in support of a warrant must permit a conclusion by a neutral and detached magistrate that the items specified in

the warrant will probably be found in a specified place to be searched. ORS 133.555(2); *State v. Poppe*, 131 Or App 14, 20, 883 P2d 905, *rev den* 320 Or 492 (1994). The standard is one of probability, which requires more than a mere possibility, *State v. Carter/Grant*, 316 Or 6, 13, 848 P2d 599 (1993), but less than a certainty, *State v. Poulson*, 150 Or App 164, 170, 945 P2d 1084 (1997). In testing an affidavit, a court is to construe it "in a commonsense, nontechnical and realistic fashion looking at the facts recited and the reasonable inferences that can be drawn from those [facts]." *State v. Charlesworth/ Parks*, 151 Or App 100, 116, 951 P2d 153 (1997), *rev den* 327 Or 82 (1998) (quoting *State v. Evans*, 110 Or App 46, 51, 822 P2d 1198 (1991)). Because of the preference for warranted searches over those conducted without prior judicial authorization, doubtful cases are to be resolved by deferring to an issuing magistrate's determination of probable cause. *State v. Pelster/Boyer*, 172 Or App 596, 600, 21 P3d 106, *rev den* 332 Or 632 (2001).

■ An additional set of principles applies when, as here, a defendant successfully controverts some of the factual assertions in the affidavit. *See* ORS 133.693(2) (a defendant may "contest the good faith, accuracy and truthfulness of the affiant as to the evidence presented before the [magistrate] issuing" the search warrant). Whether an affidavit contains inaccuracies or omits material information is a factual inquiry, and we defer to a trial court's findings in that regard as long as there is any evidence to support them. *State v. Keeney*, 323 Or 309, 317, 918 P2d 419 (1996). When an affidavit is found to contain an inaccuracy, the reviewing court must disregard the flawed information and test the adequacy of the remaining information in the affidavit. *See State v. Harp*, 299 Or 1, 9-10, 697 P2d 548 (1985). Similarly, when an affidavit is found to omit material information, the court is to determine whether the omitted facts weaken the force of the facts recited or the inferences that otherwise would be reasonable to draw. *Id.*; *see also State v. Sloan*, 66 Or App 269, 273, 673 P2d 567 (1983), *rev den* 296 Or 536 (1984) (when additional facts would affect the weight of facts that are otherwise sufficient to show probable cause, reviewing court tests affidavit to determine whether it would provide probable cause if omitted facts had been known and correct

inferences drawn). Both approaches involve a process of subtraction, not addition. *Pelster/Boyer*, 172 Or App at 599. In effect, a reviewing court: (1) deletes affirmatively wrong information; and (2) deletes inferences that are reasonable on the face of the affidavit but that would not have been reasonable if the omitted information had been disclosed. After doing so, the trial court tests the remaining information in the affidavit for probable cause.

■　　As we earlier described, the trial court granted defendants' motion to controvert based on both inaccurate and omitted information in the affidavit. Specifically, the affidavit affirmatively misrepresented the time frame in which the controlled buy occurred—that is, the affidavit described the buy as having taken place within 72 hours before the affidavit was presented to the magistrate, when in fact the buy took place five days before. The affidavit also failed to disclose that the controlled buy occurred at a third-party's residence. That omission was materially misleading, the trial court found, because the "the flow of the affidavit"—*i.e.*, the description of the controlled buy at a "predetermined location" immediately followed by a description of defendants' residence—tended to imply that the controlled buy took place at defendants' residence. Thus, the trial court subtracted the affirmatively wrong information as to when the controlled buy occurred, and it disregarded the wrong implication as to where the controlled buy occurred. After doing so, the trial court found the affidavit insufficient to provide probable cause for the search in three respects.

In the trial court's view, the most important problem in the affidavit was that the remaining information failed to establish a nexus between the place to be searched and the items to be found. The trial court observed:

> "[T]he heart of this case, as I see it is the fact that this controlled buy occurred at a location/residence different from the residence of [defendants]. And the issue is whether or not * * * the magistrate who issued the search warrant would reasonably conclude that drugs would be found at [defendants'] residence."

In concluding that the requisite nexus was lacking, the trial court considered the CRI's account that defendant Moody

told the CRI that he had "lots" of methamphetamine and wanted the CRI to sell drugs for him. But the trial court considered those hearsay statements insufficient to establish the otherwise lacking nexus:

> "[T]he mere statement by [defendant Moody] to the CRI that he had lots of methamphetamine and that he wants Mr., well, wants the CRI to sell for them and that he has lots of methamphetamine to sell doesn't connect that reputed drugs to anywhere. He could be in possession of those drugs in his car, at somebody else's home, in a storage locker. There is nothing from that statement that provides sufficient facts to make the jump from a buy that happens at a predetermined location and statements about having lots of methamphetamine to sell to [defendants'] actual residence."

Nor, in the trial court's view, did the affiant's statements as to his training and experience cure the lack-of-nexus problem. The trial court acknowledged that, in the affiant's general training and experience, drug dealers often have evidence of drug activity in their residences or on their property. The trial court viewed that fact as entitled to "some weight." But the trial court concluded that the affiant's general training and experience were not enough to provide the required nexus to defendants' residence, given the controverting information that the controlled buy had taken place in a third-party's residence, and not in defendants' home, as the affidavit on its face implied.

A second problem that the trial court identified was the lack of information in the affidavit to make it probable that defendants, in fact, were involved in ongoing drug sales. As the trial court noted, the affidavit did not disclose how much methamphetamine the CRI bought, and the affidavit set forth nothing that corroborated defendant Moody's statement that he had lots of drugs to sell:

> "[W]e don't know how much meth the CRI purchased, therefore we have no reason to know that that backs up his statement the defendant made regarding he had lots of meth and he could make the CRI a seller for him."

In other words, the inference that drugs would be found in defendants' residence was a weak one insofar as it depended

on the circumstances of the controlled buy to establish that defendants were engaged in ongoing, large-scale drug sales.

The third problem that the trial court identified in finding probable cause based on the affidavit was staleness of the information. The time lapse between when the controlled buy occurred and when the warrant was sought further weakened any inference that evidence of drug activity would probably be found in defendants' home.

We have detailed the trial court's reasoning at some length, because we agree with it and cannot improve significantly on it. As the trial court identified, the facts in the affidavit had three weaknesses: they did not establish a nexus between drug activity and defendants' residence; they provided no corroboration as to the scale or duration of defendants' drug activities; and the information was stale. It merits emphasis that the staleness problem was not merely one of a controlled buy that had occurred five days instead of 72 hours before the search warrant issued. Rather, after subtracting the inaccurate representation about the time frame, the affidavit contained no information at all as to when the controlled buy occurred. Also, the affidavit was not merely silent as to where the controlled buy occurred. Instead, it had to be reviewed as though it correctly revealed that the controlled buy did not occur at defendants' residence or at any location connected to defendants' residence.

Reading the affidavit as a totality and in a common-sense fashion, the information supporting the search warrant fell short. From the facts set forth, a reviewing magistrate knew only that: a CRI made a controlled buy from defendant Moody at some point in time, but not when; the buy was made at a predetermined location, but not at defendants' residence or in a place asserted to be proximate to or connected with defendants' residence; the CRI bought some amount of methamphetamine, but the amount was undisclosed; and defendant Moody reportedly made statements to the CRI that he was involved in ongoing drug sales, but nothing corroborated those statements. As the trial court correctly concluded, those facts were not a basis on which a reviewing magistrate reasonably could conclude that it was

probable, as opposed to merely possible, that evidence related to drug activity would be found in defendants' residence.

In arguing to the contrary, the state's central point is that the trial court unduly discounted McHaney's general training and experience and his knowledge that people involved in drug activity generally have evidence of that activity on their property and in their residences. According to the state, when that averment is given appropriate weight, the affidavit establishes the nexus between defendants' residence and evidence of illegal drug activity. The state relies on *State v. Goodman*, 328 Or 318, 975 P2d 458 (1999), claiming that, in that case, the Supreme Court "expressly concluded that such allegations *are* sufficient to supply the necessary nexus between an established crime and the suspect's residence." (Emphasis in original.) The implication of the state's argument is that an officer's statement of training and experience, if uncontroverted, is *per se* sufficient to provide the necessary nexus.

To the extent that the state argues that a reviewing court is legally bound to give greater weight to an officer's statement of his training and experience than the trial court did in this case, the state is wrong. *Goodman* declares only that "[f]acts derived from training and experience may contribute [the] necessary factual nexus in a determination of probable cause" and that "[e]xpertise is a *permissible* way to establish such a nexus." *Id.* at 328 (emphasis added). *Goodman* neither suggests nor requires that a trial court give binding, or even particular, weight to an officer's training and experience. To the contrary, *Goodman* confirms the converse proposition that the weight to be given to such representations depends on the totality of the facts contained in the affidavit: "We do not here suggest that an officer's expertise, unconnected to objective facts derived from other sources, will satisfy constitutional requirements." *Id.*

We agree with the trial court that the facts in the affidavit in this case, as controverted, were simply too weak to be shored up by the officer's general training and experience. Again, the affidavit described a single sale of an unknown quantity of methamphetamine that occurred at some undisclosed time at a location other than defendants'

residence. Nothing corroborated defendant Moody's vague statement about having "lots" of methamphetamine to sell. The officer's expertise was simply too "unconnected to objective facts derived from other sources" to provide probable cause to search defendants' residence.

In sum, although the facts suggest a possibility that criminal evidence might be found at defendants' residence, that is not the standard to be met here. The trial court correctly concluded that the affidavit, read as a whole and in a commonsense way, did not support a conclusion that the items to be seized *probably* would be found in defendants' residence. The trial court therefore correctly suppressed the evidence seized in the search of defendants' residence.

Affirmed.