Argued and submitted October 31, reversed and remanded December 19, 2001,
petition for review denied March 26, 2002 (333 Or 595)

## STATE OF OREGON,
*Appellant,*

*v.*

## CHESTER CARLTON WESTFALL,
*Respondent.*

## 98CR3169FE; A112499

37 P3d 1030

Doug M. Petrina, Assistant Attorney General, argued the cause for appellant. With him on the briefs were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Jesse Wm. Barton, Chief Deputy Public Defender, argued the cause for respondent. With him on the brief was David E. Groom, State Public Defender.

Before Haselton, Presiding Judge, and Linder and Wollheim, Judges.

HASELTON, P. J.

**HASELTON, P. J.**

In this prosecution for drug, theft, firearm, and forgery-related offenses, the state appeals from an order suppressing evidence on the ground that, with respect to certain items, the warrant authorizing the search of defendant's hotel room and vehicles was unsupported by probable cause. ORS 138.060(3). Defendant cross-assigns error to the trial court's denial of his motion to controvert information contained in the search warrant affidavit. We reverse and remand.

On October 26, 1998, Douglas County Sheriff's Office Deputy Bradburn executed an affidavit in support of an application for a warrant to search defendant's room at the Riverside Lodge Motel in Canyonville as well as two vehicles at the motel. That affidavit recounted the following matters:

• On October 26, 1998, Bradburn spoke with Douglas County Deputy Strickland and learned that a third officer, Deputy Fitzgerald, had spoken with the manager at the Riverside Lodge Motel. The manager told Fitzgerald that a man and a woman, registered under the name "Martin," had been staying in unit # 8 since October 19 and were driving two vehicles, a white 1998 Dodge Neon with Oregon license WLV696 and a 1988 Jeep Cherokee with Oregon license UAZ921. The couple had told the motel manager that they did not want motel staff coming into their room to clean it. On October 25, the manager had entered the room to do some cleaning. Inside the room, the manager saw a computer and three large trash bags filled with bank receipts and bank statements. The manager believed that the couple may have been printing out unauthorized bank checks, and contacted the police.

• Also on October 26, Bradburn spoke with Grants Pass Police Detective Runyon. Runyon told Bradburn that the Grants Pass Police were looking for a 1998 Dodge Neon with Oregon license number WLV696. According to Runyon, the car had been rented to Chester Westfall (defendant), who was wanted pursuant to a felony warrant for a probation violation. Runyon further told Bradburn that defendant and his wife, Nancy Westfall, had been moving between motels in an effort to elude detection by police. Defendant's wife was on felony probation for possession of a controlled substance, and defendant was the

prime suspect in an ongoing financial fraud investigation. According to Runyon, he had probable cause to arrest defendant for forgery, aggravated theft, burglary, and felon in possession of firearms and anticipated obtaining warrants based on those offenses that same day.

- Bradburn then conducted a records check. That inquiry confirmed that there was a warrant for defendant's arrest and that defendant's wife was on probation for possession of a controlled substance. A criminal history background check revealed that defendant had prior convictions for possession of a controlled substance and for felon in possession of a firearm.

- In response to the information from the motel manager, Deputy Strickland drove to the Riverside Lodge Motel to investigate. Bradburn and two other detectives joined Strickland shortly thereafter. Bradburn saw both the 1998 Dodge Neon with license number WLV696 and a grey 1988 Jeep Cherokee with license number UAZ921 parked at the motel. While the officers were in front of the motel, Bradburn saw a woman meeting the description of defendant's wife walking toward the white Neon. Bradburn approached her, identified himself as a police officer, and asked her if defendant was in unit # 8. She indicated that he was and then said that she had nothing to say and wanted to talk to an attorney.

- While Bradburn was speaking with defendant's wife, Detective Sanders walked over to unit # 8. Through the partially open door, Sanders saw defendant sitting in front of a computer. Next to the computer was a mirror bearing a white powdery substance. There was a razor blade and a clear plastic bindle next to the mirror. Based on Sanders' experience, he believed the substance to be methamphetamine. Accordingly, Sanders arrested defendant for possession of a controlled substance. Defendant was subsequently also arrested based on the outstanding felony warrant.

- In Bradburn's training and experience encompassing more than eight years in law enforcement, he has learned that methamphetamine is an addictive drug and methamphetamine use is an expensive habit. To pay for that habit, "a great many addicts resort to burglary, theft and robbery in order to obtain property to sell or to trade for methamphetamine." Moreover, "persons who are involved in the manufacture, distribution, and possession of controlled substances often keep firearms as a means of protection from persons seeking to take the illegal substances from them including police."

Relying on Bradburn's affidavit, a magistrate issued a warrant on October 26. The warrant authorized the search of unit # 8 at the Riverside Lodge Motel, the grey 1988 Jeep Cherokee, and the white 1998 Dodge Neon for credit cards, personal checks, computers, computer data storage devices, drugs and other drug-related evidence, and "[a]ny other evidence of the crimes of: forgeries, credit card fraud, theft, burglary and felon in possession of firearms." That same day, officers executed the warrant and seized numerous items of evidence relating to forgery, theft, drug, and firearms offenses.

■ Before trial, defendant moved to controvert certain information included in Bradburn's affidavit and to suppress the evidence found during the search of the motel room and the vehicles. Defendant's motion to controvert was based on, *inter alia,* the omission from Bradburn's affidavit of the fact that, before defendant was arrested, Deputy Fitzgerald had previously entered defendant's room with the motel manager's permission. According to defendant, Bradburn's omission constituted a "fail[ure] to fully reveal adverse information known to him * * * [that] resulted in a disruption of the magistrate's inference drawing process and evaluation of the affidavit." The trial court denied the motion:

"I don't think there's any evidence that the affiant Officer Bradburn acted in bad faith or was dishonest. I think there is evidence he didn't put everything in the affidavit that you would want him to put in the affidavit. He didn't put the fact that Officer Fitzgerald had been in the motel room before. I don't find that to be a fatal flaw. * * * I just don't find any falsity or bad faith on the part of the affiant."

The trial court, however, partially granted defendant's motion to suppress. Specifically, although the court declined to suppress the drug-related evidence, the court did suppress all of the evidence related to theft, forgery, and firearms offenses:

"I think there's probable cause in the search warrant to search for controlled substances and after hearing the testimony I believe that the officer had probable cause to search for evidence of forgeries, theft, maybe a gun, but I don't think that's set forth in the affidavit[.] * * * I just don't

find probable cause to search for and seize credit cards, personal checks, computers. * * * So I guess the affidavit, my ruling is, sufficient in terms of searching for and seizing the suspected methamphetamine and nothing else that's asked for."

The state appeals, challenging the trial court's determination that the warrant was unsupported by probable cause to search for evidence of theft, forgery, and firearms-related crimes. Defendant, in response, defends the trial court's ruling in that regard but cross-assigns error to the trial court's denial of his motion to controvert.[1] Defendant does not cross-appeal from the court's denial of suppression with respect to evidence of controlled substance offenses.

At the outset, we reject defendant's cross-assignment of error. Defendant has not shown that Bradburn inaccurately or untruthfully related any information that was contained in the affidavit, *see State v. Hoffer*, 114 Or App 508, 511, 835 P2d 959, *rev den* 315 Or 272 (1992) (a defendant cannot use motion to controvert to "challenge the truthfulness and accuracy of statements made by declarants to the affiant"), and we decline to disturb the trial court's conclusion that Bradburn acted in good faith. *See* ORS 133.693(2) (defendant may "contest the good faith, accuracy and truthfulness of the affiant as to the evidence presented before the issuing authority"); *State v. Wilson*, 178 Or App 163, 167, 35 P3d 1111 (2001) ("Whether an affidavit contains inaccuracies or omits material information is a factual inquiry, and we defer to a trial court's findings in that regard as long as there is any evidence to support them."). The motion to controvert was properly denied.

■ We turn to the issue of probable cause. In *State v. Pelster/Boyer*, 172 Or App 596, 21 P3d 106, *rev den* 332 Or 632 (2001), we summarized the probable cause inquiry:

---

[1] In particular, defendant's cross-assignment of error challenges the trial court's denial of his motion to controvert with respect to: (1) the omission from Bradburn's affidavit of the fact that, before defendant was arrested, Fitzgerald had previously entered the room with the motel manager's permission; (2) Bradburn's statement in his search warrant affidavit that the motel manager thought he was printing out unauthorized bank checks; and (3) Bradburn's statement that defendant had a prior conviction for felon in possession of a firearm.

"Our purpose in reviewing the sufficiency of an affidavit supporting an application for a search warrant is to determine whether, on the basis of the information in the affidavit, a neutral and detached magistrate could have concluded that there was probable cause to believe that a search would discover the specified things in the specified places. *State v. Young*, 108 Or App 196, 200, 816 P2d 612 (1991), *rev den* 314 Or 392 (1992). In reviewing the issuance of a search warrant, we defer to the issuing magistrate's determination of probable cause and resolve doubtful cases by the preference for searches that are conducted under the authority of warrants rather than without prior judicial authorization. *See State v. Prince*, 93 Or App 106, 112, 760 P2d 1356, *rev den* 307 Or 246 (1988)." *Id.* at 600.

In addition, where, as here, an affidavit includes information from named individuals, we apply a "totality of the circumstances" test. *Id.* Under that standard, " '[p]robable cause' arises from information provided by named informants when a reasonable person, based on the totality of the circumstances, would believe that it is probable (more likely than not) that the objects of the search will be found at the location to be searched." *Id.* at 601; *see also State v. Anspach*, 298 Or 375, 380-81, 692 P2d 602 (1984) (same). In assessing whether an affidavit establishes probable cause, we rely on the facts as stated, together with any reasonable inferences that can be drawn from those facts. *State v. Poulson*, 150 Or App 164, 170, 945 P2d 1084 (1997).

Here, the trial court concluded—and defendant does not dispute—that the affidavit establishes probable cause to search for items relating to controlled substance-related offenses. The question, thus, is whether the affidavit established probable cause to search for, and seize, the other items named in the affidavit relating to property and financial crimes and to the crime of felon in possession of firearms.

The trial court concluded that the affidavit did not establish probable cause to search for evidence of property and financial crimes, including credit cards, computers, data storage devices, personal checks, and other evidence of theft and burglary. We disagree. As recounted earlier, Bradburn's affidavit reliably averred: (1) Defendant and his wife had been registered at the motel under a false name for nearly a

week. (2) Defendant and his wife had prohibited motel staff from entering and cleaning their room. (3) Defendant was the prime suspect in an ongoing Grants Pass Police Department investigation for using stolen checks and travelers checks— and the Grants Pass Police were in the process of entering felony warrants for defendant on charges of forgery, aggravated theft, and burglary. (4) The Grants Pass Police suspected that defendant and his wife were moving between motels to avoid police detection. (5) Defendant had a computer and three large trash bags full of bank receipts and bank statements in his motel room. (6) Officers had arrested defendant for possession of controlled substance after seeing, through an open door to his motel room, a white powder that appeared to be methamphetamine and related paraphernalia. (7) Defendant's wife was on felony probation for possession of a controlled substance. And, (8) based on Bradburn's training and experience, methamphetamine addicts often "resort to burglary, theft and robbery in order to obtain property to sell or to trade for methamphetamine."

That information establishes probable cause to search for evidence of property-related and financial crimes. The information provided by the motel manager and Runyon, as named informants, was presumptively reliable. *State v. Faulkner*, 89 Or App 120, 123, 747 P2d 1011 (1987) (named citizen-informant "deemed reliable if he personally observed the events reported and voluntarily initiated the report"); *State v. Fink*, 79 Or App 590, 594, 720 P2d 372, *rev den* 302 Or 36 (1986) (veracity established by status as a named informant and police officer). Moreover, much of that information was corroborated by the Douglas County Sheriff's Office's own investigation. *See Pelster/Boyer*, 172 Or App at 605 (fact that information from named informants is corroborated in part by police "weigh[s] in favor of probable cause"). Thus, viewed in the totality of the circumstances, the facts in Bradburn's affidavit established probable cause that a search of defendant's motel room and two vehicles would yield evidence relating to property and financial crimes, including credit cards, personal checks, computers, and computer data storage devices. *Anspach*, 298 Or at 380-81. The trial court erred in concluding otherwise.

The remaining question is whether Bradburn's affidavit established probable cause to search for evidence of the

crime of felon in possession of a firearm. We conclude that it does. In that regard, Bradburn's affidavit recited that: (1) Defendant had just been arrested in his motel room for possession of a controlled substance that appeared to be methamphetamine. (2) In Bradburn's training and experience, individuals involved with controlled substances "often keep firearms as a means of protection from persons seeking to take the illegal substances from them including police." (3) A criminal history background check revealed that defendant had prior convictions for felon in possession of a firearm and for possession of a controlled substance. And, (4) Grants Pass Detective Runyon had told Bradburn that Grants Pass Police had probable cause to arrest defendant for felon in possession of a firearm. The totality of those circumstances established probable cause to search for, and seize, firearms.

Reversed and remanded.