Argued and submitted November 18, 2008, at Glencoe High School, Hillsboro;
reversed and remanded July 1, petition for review denied
September 17, 2009 (347 Or 43)

# STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

# MAGDALENO CHAMU-HERNANDEZ,
*Defendant-Respondent.*

Marion County Circuit Court
06C54101; A135210

212 P3d 514

———————

Christina M. Hutchins, Senior Assistant Attorney General, argued the cause for appellant. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Jason Edward Thompson argued the cause for respondent. With him on the brief was Ferder Casebeer French & Thompson, LLP.

Before Edmonds, Presiding Judge, and Wollheim, Judge, and Sercombe, Judge.

WOLLHEIM, J.

## WOLLHEIM, J.

The state appeals the trial court's order granting defendant's motion to suppress evidence obtained during the execution of a search warrant. The search warrant was issued by the Washington County Circuit Court for execution at two residences in Marion County and one residence in Washington County. During the execution of the warrant, defendant was present at one of the Marion County residences. Prior to the trial in Marion County, defendant moved to suppress all of the evidence obtained as a result of the search of that Marion County residence.[1] The Marion County Circuit Court granted defendant's motion on the basis that the affidavit supporting the search warrant did not set forth facts sufficient to authorize the issuance of an out-of-district warrant. ORS 133.545(2). We reverse and remand.

We take the facts from the uncontroverted affidavit submitted by police officer Abrahamson. *State v. Goodman*, 328 Or 318, 325, 975 P2d 458 (1999). Abrahamson is an investigator in the Portland Police Bureau's drug-vice division and has had training and experience investigating drug-related crimes while serving for approximately six years as a police officer in this state.

Abrahamson learned from a confidential reliable informant that the informant had purchased cocaine from Primo and Inocente. To verify that information, Abrahamson arranged for the informant to make two controlled purchases of cocaine. The informant initiated both of those purchases by calling Primo. In those telephone calls, the informant agreed to buy cocaine and made arrangements to meet Primo's runner at a particular time and place. The informant met Inocente and bought cocaine from him.[2]

---

[1] The search of the other Marion County residence is unrelated to the issue on appeal in this case. We refer to the Marion County residence that is at issue in this case as "the Marion County residence."

[2] For those controlled purchases, the officer first searched the informant to make certain that the informant did not possess any controlled substances, other contraband, or any money other than the money that the officer gave to the informant. The informant was kept under constant surveillance to deny the informant the opportunity to contact other individuals. Following the meeting between the informant and the runner, the informant gave the officer the controlled substances.

After the first controlled purchase, Inocente drove to a residence in Beaverton, a city in Washington County. From that residence, Inocente drove to and met various other people at various parking lots and businesses at unspecified locations. Following those meetings, Beaverton police officers conducted a traffic stop of Inocente. After the second controlled purchase, Inocente drove to the Washington County residence and then returned to the Marion County residence without making any additional stops.

After Abrahamson placed Inocente under surveillance, Abrahamson observed Primo leaving the Marion County residence one morning. Inocente left shortly thereafter and drove to the Washington County residence. From there, Inocente again drove to and met various people at residences, businesses, and parking lots. Following several of those meetings, each lasting no longer than 10 minutes, Inocente returned to he Washington County residence. That pattern of behavior continued throughout the day.

Abrahamson stated in his affidavit that Inocente's meetings were "what I know based on my training and experience is drug distribution." Abrahamson also stated that he knew, based on his training and experience, that drug dealers "only keep the amount of drugs on hand they need for the next day" and that "the drug runner[']s manager will pick up and deliver the drugs from the stash house and take them to the drug runner when needed."

Abrahamson had also obtained a separate warrant from the Multnomah County Circuit Court to place a GPS tracking device on the vehicle that Inocente regularly drove. Almost daily during the one-week period that the GPS device was installed, the device recorded that it left the Marion County residence each morning, made frequent short stops at various unspecified locations in the Portland metropolitan area, returned to the Washington County residence, and, each evening, traveled back to the Marion County residence. Abrahamson identified the Washington County residence as Inocente's "day residence."

Based on those facts, Abrahamson believed that Inocente was engaged in "an ongoing criminal enterprise to

distribute * * * cocaine" from the Washington County and Marion County residences. Accordingly, Abrahamson sought a warrant to search both locations. Abrahamson stated that evidence relating to distribution of cocaine is likely to be found where drug dealers live. Abrahamson also stated that that evidence would likely include records of drug sales, customer and supplier accountings, packaging materials, and scales.

The Washington County Circuit Court issued a warrant authorizing the searches, and when it was executed, defendant was present at the Marion County residence. It is unclear from the record what defendant's connection is to that residence, to Inocente, or to Primo. Ultimately, defendant was charged with two counts of unlawful delivery of methamphetamine, ORS 475.890, and two counts of unlawful delivery of cocaine, ORS 475.880.

Before trial, defendant moved to suppress the evidence obtained from the search of the Marion County residence. That evidence constitutes all the evidence that the state intended to use against defendant.

Defendant argued that the Washington County Circuit Court lacked authority to issue a search warrant to be executed in Marion County under ORS 133.545(2), because the facts in the affidavit were insufficient to establish that the search of the Marion County residence was related to an offense committed or triable in Washington County. In addition, defendant argued that the Washington County Circuit Court failed to make express findings on the face of the warrant that the conditions described in ORS 133.545(2) were satisfied.

For both of those reasons, defendant asserted, the warrant was void *ab initio*. Thus, in defendant's view, the search of the Marion County residence was warrantless and, therefore, *per se* unreasonable. Accordingly, defendant claimed that Article I, section 9, of the Oregon Constitution and the Fourth Amendment to the United States Constitution compel suppression of the evidence obtained from that search.

The state argued that the warrant was properly issued because the affidavit set forth facts establishing probable cause that the search of the Marion County residence was related to the crimes of delivery of cocaine that occurred in Washington County. The state acknowledged that the officer's affidavit did not identify any specific location where the criminal activities were observed by the officer or reported to the officer by the informant.[3] Nonetheless, the state argued that, under the totality of the facts stated in the affidavit, a reasonable inference from those facts was that Inocente used the Washington County residence in conjunction with an ongoing criminal enterprise to distribute cocaine. The state also argued that ORS 133.545 did not require any express findings to be made on the face of the warrant.[4]

The Marion County Circuit Court agreed with the state that ORS 133.545(2) did not require the Washington County Circuit Court to make express findings on the face of the warrant. However, the Marion County Circuit Court found that there was insufficient evidence in the affidavit to establish probable cause that an offense was committed or triable within Washington County. The Marion County Circuit Court observed that the affidavit did not identify where Primo was when he received the calls initiating the controlled buys, that "[n]one of the controlled buys are identified as occurring in Washington County," and that observations of Inocente's activities "in the Portland metropolitan area are not specified that they're in Washington County." The trial court concluded:

"[T]here's an absence of information that leads one to the conclusion that in fact there was a crime committed in Washington County. And if one of these things had actually occurred in Washington County, then it should have said so.

---

[3] The state explained that the affidavit did not reveal the locations of the controlled purchases in an attempt to protect the identity of the informant.

[4] In addition, the state argued that, pursuant to ORS 136.432, the suppression of evidence from trial is not a remedy available to the trial court for mere statutory violations in the issuance of a search warrant unless suppression is mandated by a constitutional provision. Because we conclude that the warrant did not violate any statutory requirements, we do not reach that argument.

> "And so whether I believe it was intentionally left out in order to mask the identity of the confidential source or whether in fact it didn't occur in Washington County; the fact is * * * that there's not information that these things occurred in Washington County. And what I'm left with is a drug dealer that following a particular controlled buy, goes to that house. And that's what occurred in Washington County. And I don't know how that's a crime."

Based on that reasoning, the Marion County Circuit Court granted defendant's motion to suppress evidence. This appeal followed.

The question on appeal is whether the Marion County Circuit Court correctly determined that the Washington County Circuit Court lacked authority to issue the search warrant of the Marion County residence. A magistrate has authority to issue a search warrant only upon a finding of "probable cause to believe that the search will discover things specified in the application and subject to seizure." ORS 133.555(2). As a general rule, "a search warrant issued by a judge of a circuit court may only be executed *within* the judicial district in which the court is located." ORS 133.545(1) (emphasis added). However, ORS 133.545(2) creates an exception to the general rule:

> "Notwithstanding subsection (1) of this section, a circuit court judge may authorize execution of a search warrant *outside* of the judicial district in which the court is located, if the judge finds from the application that one or more of the objects of the search relate to an offense committed or triable *within* the judicial district in which the court is located * * *."

(Emphasis added.)

Here, the state argues that an offense was "triable" within Washington County because the facts in the affidavit were sufficient to establish probable cause that the Washington County residence was being used in a drug-dealing operation. Defendant responds that "nothing in the affidavit established that any offense transpired in Washington County." Thus, the issue, as framed by the parties, is whether the affidavit is sufficient to establish that the Washington County

residence was used in a drug-dealing operation such that a reasonable magistrate could have found probable cause that a crime was committed or triable within Washington County.

■ The sufficiency of an affidavit supporting a search warrant involves two questions: "(1) whether there is reason to believe that the facts stated are true, and (2) whether the facts and circumstances disclosed by the affidavit, if true, are sufficient to establish probable cause to justify the search requested." *State v. Villagran*, 294 Or 404, 408, 657 P2d 1223 (1983). Here, defendant has not challenged any of the factual representations contained in the affidavit. Accordingly, our review is limited to whether the facts in the affidavit establish probable cause for the warrant. *See Goodman*, 328 Or at 325 (where the "defendant did not move to controvert any of the statements in the affidavit and does not challenge them here * * *, our inquiry is limited to whether the uncontroverted facts in the affidavit establish probable cause").

■ The facts in the affidavit establish probable cause if those facts would "permit a neutral and detached magistrate to determine that seizable evidence probably would be found at the place to be searched." *State v. Castilleja*, 345 Or 255, 269, 192 P3d 1283, *adh'd to on recons*, 345 Or 473, 198 P3d 937 (2008). " 'Probably' means 'more likely than not.' " *State v. Chambless*, 111 Or App 76, 80, 824 P2d 1183, *rev den*, 313 Or 210 (1992).

■ Our review is based on the facts before the issuing court. *Castilleja*, 345 Or at 265-66. Thus, we grant no deference to the *trial court*'s findings or conclusions, but we allow all inferences that the *issuing court* may have fairly drawn from the facts in the affidavit when that affidavit is read in a common-sense, nontechnical, and realistic fashion. *Id.* at 270; *State v. Jennings*, 220 Or App 1, 5, 184 P3d 1200 (2008).

■ The issuing court may fairly consider facts stated in an affidavit that are derived from a police officer's training and experience. *Goodman*, 328 Or at 328. In addition, defendant has the burden to prove the unlawfulness of the warrant, *State v. Johnson*, 335 Or 511, 521, 73 P3d 282 (2003), and we, therefore, resolve doubtful or marginal cases in favor

of the preference for warrants. *State v. Ramirez*, 223 Or App 241, 244, 195 P3d 460 (2008).[5]

■ We begin by reviewing the facts in the affidavit regarding the scope of Inocente's drug-dealing activities within Washington County. The affidavit establishes that Inocente had twice delivered cocaine to the informant at unspecified locations on behalf of Primo. After the first of those deliveries, and on a regular basis when he was under surveillance, Inocente returned to the Washington County residence in the course of making additional short stops to meet people in parking lots, at businesses, and at residences throughout the Portland metropolitan area. After the second of those deliveries, Inocente again drove directly to the Washington County residence prior to returning to the Marion County residence.

Based on his training and experience, Abrahamson identified Inocente's stops in the Portland metropolitan area as "drug distribution." In addition, Primo visited Inocente at the Marion County residence prior to at least one of Inocente's trips to the Portland metropolitan area, and that visit was consistent with Abrahamson's statement that drug distributors deliver drugs to their runners when needed.

Where Abrahamson's identification of Inocente's activities in the Portland metropolitan area is a fact derived from Abrahamson's experience and training as a drug-vice officer, the issuing magistrate could have reasonably concluded that Inocente was likely to have been engaging in drug deliveries. In addition, reading the affidavit in a common-sense and nontechnical fashion, it would be reasonable to infer that Inocente used the Washington County residence—identified by Abrahamson as Inocente's "day residence"—as his base of operations for those drug deliveries.

---

[5] The preference for warrants is rooted in the constitutional principle of separation of powers. That preference recognizes that a search pursuant to a warrant involves both the executive branch, which conducts the search, and the judicial branch, which issues the warrant. By contrast, a warrantless search is the unilateral act of the executive branch unchecked by judicial oversight. *State v. Castilleja*, 215 Or App 235, 274, 168 P3d 1177 (2007) (Schuman, J., dissenting), *rev'd*, 345 Or 255, 192 P3d 1283 (2008).

Thus, although the locations of Inocente's drug deliveries were not specified in the affidavit, Inocente's usage of the Washington County residence allows the reasonable inference that, at the very least, Inocente possessed controlled substances there for the purpose of delivering drugs. To the extent any lingering doubts persist, our conclusion is dictated by our standard of review, which commands that we resolve doubtful cases in favor of the preference for warrants. Consequently, we conclude that the facts in the affidavit were sufficient to establish that a crime was triable within Washington County. The Washington County Circuit Court, therefore, had authority to issue the search warrant of the Marion County residence, and the trial court erred in concluding otherwise.

In light of that conclusion, we turn to defendant's arguments that the motion to suppress was properly granted for reasons not identified by the trial court. *See Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001) (an appellate court may affirm a trial court's decision on an alternative basis when, among other considerations, the record at trial is sufficiently developed).

First, defendant asserts that the affidavit did not establish a nexus between any evidence likely to be found at the Marion County residence and any crime that had been committed or was triable in Washington County. Defendant relies on two cases in which the facts in the affidavits were insufficient to establish probable cause that drug-related evidence would be found in the defendants' residences: *State v. Wilson*, 178 Or App 163, 35 P3d 1111 (2001), and *State v. Evans*, 119 Or App 44, 849 P2d 539 (1993). Those cases do not control the outcome in this case. In *Wilson*, the affidavit established that the defendant had sold drugs only in one instance. 178 Or App at 171-72. In *Evans*, the affidavit established only that the defendants had tended marijuana plants at an outdoor garden 35 miles from their residence. *Evans*, 119 Or App at 46. In neither of those cases did the affidavits establish that the defendants were engaged in ongoing drug sales.

■■ Here, as explained above, the facts in the affidavit establish probable cause that Inocente repeatedly engaged in

drug deliveries. Abrahamson stated that his training and experience led him to believe that specific evidence of drug-dealing activities, such as scales, sales records, and packaging materials, would be found where drug dealers live. The reliance on that expertise is a permissible way to establish a nexus between a suspected crime and a particular location to be searched. *Goodman*, 328 Or at 328. Inocente's pattern of regularly leaving the Marion County residence in the morning and returning there at night allows a reasonable inference that Inocente lived at the Marion County residence. Accordingly, the affidavit properly established a nexus linking the evidence that would likely be found at the Marion County residence with Inocente's drug deliveries in the Portland metropolitan area and his criminal possession of drugs at the Washington County residence.[6]

Second, defendant argues that, under our reasoning in *State v. Clapper*, 216 Or App 413, 416-18, 173 P3d 1235 (2007), the Washington County Circuit Court was required to make explicit findings on the face of the warrant to support the court's statutory authority under ORS 133.545(2) to issue an out-of-district warrant. That argument is consistent with the position advanced by the defendant in *Clapper*, but this court did not adopt that position, nor did we decide that ORS 133.545(2) required any explicit findings to be made on the face of the warrant. Rather, in *Clapper*, we simply held that, where the search warrant incorporates an affidavit which states the necessary findings, the warrant complies with ORS 133.545(2). 216 Or App at 418. Here, the issue is different because the Washington County Circuit Court did not make any explicit findings and the warrant did not incorporate the affidavit. Accordingly, this case presents occasion to squarely address whether ORS 133.545(2) requires any explicit findings of fact.

That presents a question of statutory interpretation, which we analyze to ascertain the intent of the legislature

---

[6] Defendant suggests that evidence of criminal activity would more likely be found at the other Marion County residence, rather than at the Marion County residence where defendant was present. However, where the facts in the affidavit show probable cause to search multiple locations, an issuing magistrate may properly grant a warrant to search each of those locations even if relevant evidence is more likely to be found at one of those locations. *Villagran*, 294 Or at 413-15.

under the methodology set forth in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), as modified by *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). We begin by examining the statutory text in context, along with any legislative history offered by the parties. *Gaines*, 346 Or at 171-72 (stating methodology). In this case, neither party offers any legislative history, and we determine that the legislature's intent is unambiguous from the statutory text and context. *See* ORS 174.020(3) ("A court may limit its consideration of legislative history to the information that the parties provide to the court."); *Gaines*, 346 Or at 172 (stating methodology).

■ ORS 133.545(2) provides that a circuit court judge may authorize a search warrant to be executed out-of-district only "if the judge *finds* from the application that one or more of the objects of the search relate to an offense committed or triable within the judicial district in which the court is located." (Emphasis added.) The plain text of that statute does not require a trial court to make any explicit findings of fact. By contrast, ORS 133.565 delineates the specific and express statements that must be contained on the face of the warrant, including the name and location of persons and places to be searched, the items that may be searched or seized, and the period of time in which the warrant may be executed.[7] If the legislature had intended to require explicit findings of fact to be made on the face of the warrant, it knew how to do so, ORS 133.565, and chose not to, ORS 133.545(2). Further, where ORS 133.565 does not require any express

---

[7] ORS 133.565 provides, in part:

"(1) A search warrant shall be dated and shall be addressed to and authorize its execution by an officer authorized by law to execute search warrants.

"(2) The warrant shall state, or describe with particularity:

"(a) The identity of the judge issuing the warrant and the date the warrant was issued;

"(b) The name of the person to be searched, or the location and designation of the premises or places to be searched;

"(c) The things constituting the object of the search and authorized to be seized; and

"(d) The period of time, not to exceed five days, after execution of the warrant except as provided in subsection (3) of this section, within which the warrant is to be returned to the issuing authority."

statements regarding the authority of a court to issue an out-of-district warrant, we cannot insert a requirement that the legislature omitted. *See* ORS 174.010 (directing courts engaging in statutory construction "not to insert what has been omitted"). Thus, we conclude that ORS 133.545(2) does not require an issuing magistrate to make any express findings of fact when issuing an out-of-district warrant. Consequently, defendant's argument that the warrant is statutorily defective fails.

In sum, the Washington County Circuit Court properly issued the search warrant based on probable cause that at least some evidence to be found at the Marion County residences related to a crime committed or triable in Washington County. Thus, the evidence obtained from that lawful search should not have been suppressed at trial. The trial court erred in granting defendant's motion to suppress that evidence.

Reversed and remanded.